**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CLYDE FRANKLIN HOLLAND,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:18-CV-178 (MTT)** |
| | ) | |
| | ) | |
| **Warden GREGORY MCLAUGHLIN,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**ORDER**

Before the Court is a motion for summary judgment filed by Defendant Gregory McLaughlin. For the reasons discussed below, that motion (Doc. 40) is **GRANTED** as to Holland's claim of deliberate indifference to medical needs but **DENIED** as to Holland's retaliation claim.

## I. BACKGROUND

This Section 1983 action involves claims of retaliation and deliberate indifference by Plaintiff Clyde Holland, a Georgia prisoner proceeding *pro se*, against Gregory McLaughlin, the former Warden of Macon State Prison. Holland alleges that McLaughlin retaliated against him based on two prior Section 1983 actions litigated in this Court.

On July 6, 2016, Holland filed *Holland v. McLaughlin, et al.*, No. 5:16-cv-331-TES-MSH (M.D. Ga.) ("*Holland I*"). In that case, Holland raised claims relating to (i) medical treatment for a variety of ongoing ailments (the need for dentures, digestive

issues, and low blood sugar), (ii) the provision of Harvoni, a hepatitis C drug, (iii) injuries from hitting his head on a locker door, and (iv) treatment for injuries from a fall while being taken to the hospital. McLaughlin waived service of process on May 9, 2017 and filed an answer on June 9. *Holland I*, Docs. 16; 21. On March 25, 2019, the Court granted summary judgment as to all three claims, finding that the undisputed evidence revealed, as a matter of law, that Holland received appropriate medical care. *Holland I*, Docs. 61 at 4-6; 63.

On December 1, 2016, Holland filed a second case, *Holland v. Macon State Prison, et al.*, No. 5:16-cv-539-MTT-MSH (M.D. Ga.) ("*Holland II*"), in which he raised claims of deliberate indifference by prison staff, including McLaughlin, to a heart attack or stroke he allegedly suffered in November 2016. McLaughlin waived service of process on May 26, 2017 and filed an answer on June 23. *Holland II*, Docs. 18; 21. Because no evidence suggested that Holland suffered a heart attack or stroke, the Court granted summary judgment for the defendants on August 14, 2019. *Holland II*, Docs. 84 at 7; 88. An appeal of the judgment in that case remains pending.

In this action, Holland alleges that McLaughlin retaliated against him for his prior lawsuits by having him transferred from general population to segregation or an "isolation cell." Doc. 40-5 at 8:1-25. Holland was transferred from general population into segregation in early July 2017, the actual date is disputed, and he remained in segregation until the end of July. *Id*. at 38:6-25, 171-77.

Holland also alleges that McLaughlin was deliberately indifferent to his medical needs. According to Holland, McLaughlin knew about but failed to accommodate

Holland's medical issues, causing Holland to suffer from high blood pressure and fluid buildup. Doc. 8 at 2.

## II. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id*. (alterations in original) (quoting *Celotex*, 477 U.S. at 324). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id*.

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id*. (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

Based on the record, no reasonable jury could find that McLaughlin was deliberately indifferent to Holland's serious medical needs. However, a jury could infer from the chronology of events that McLaughlin transferred Holland to segregation, or was complicit in the transfer, in retaliation for Holland's prior litigation against McLaughlin. Thus, McLaughlin is entitled to summary judgment regarding Holland's deliberate indifference claim but not as to Holland's retaliation claim.

### A. Retaliation

Holland argues that McLaughlin engineered Holland's reassignment to segregation in retaliation for *Holland I* and *Holland II*. To establish a retaliation claim, Holland must demonstrate (i) constitutionally protected speech, (ii) that McLaughlin's

retaliatory action adversely affected the speech, and (iii) a causal connection between the speech and the retaliation. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). As a matter of law, filing a lawsuit is a constitutionally protected form of speech, and McLaughlin does not contest the "adverse effect" element. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).

Instead, McLaughlin argues that no evidence demonstrates a sufficient causal connection between Holland's prior litigation and his transfer to segregation. Doc. 40-2 at 7-10. As to the causal connection, "most courts resolve this subjective motivation issue under the *Mt. Healthy* burden-shifting formula." *Smith v. Mosely*, 532 F.3d 1270, 1278 (11th Cir. 2008) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). Under this formula, Holland has the initial burden of showing that his protected conduct was a motivating factor behind McLaughlin's adverse action. *Id*. (citations omitted). If Holland makes this showing, the burden shifts to McLaughlin to show that "he would have taken the same action in the absence of the protected activity." *Id*. (citations omitted).

Construing the evidence in the light most favorable to Holland, he has presented sufficient evidence of a "chronology of events from which retaliation may plausibly be inferred" to meet his initial burden under *Mt. Healthy*. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). First, there is temporal proximity between the segregation decision and McLaughlin receiving notice of Holland's lawsuits.[1] McLaughlin entered

[1] The Eleventh Circuit has not formally adopted the use of temporal proximity in First Amendment retaliation cases, but it has used temporal proximity to establish causation in other contexts. *Stallworth v. Tyson*, 578 F. App'x 948, 951 (11th Cir. 2014) (citing *Stanley v. City of Dalton*, 219 F.3d 1280, 1282, 1291 & n.20 (11th Cir. 2000)). In Title VII retaliation cases, the Circuit has held that "mere temporal proximity, without more, must be 'very close.'" *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1327-28 (11th Cir.

waivers of service on May 9, 2017 in *Holland I* and May 26 in *Holland II*, a little over one month before Holland's move to segregation. From this evidence, a jury could infer that McLaughlin became aware of Holland's lawsuits shortly before Holland's move to segregation.

If Holland's testimony is believed, the temporal proximity is significantly tighter. Prison records suggest that Lt. Mark Charles ordered the assignment on July 11, 2017. Doc. 40-5 at 172. McLaughlin signed the order on July 12, ordering the Classification Committee to hold a hearing on the matter. *Id*. A record from the Classification Committee dated July 13, 2017, shows that Holland was assigned to segregation "for violation of facility rules/failure to follow instructions" and that Holland was afforded the chance to offer a rebuttal. *Id*. at 173. A deputy warden signed the Classification Committee report on July 14. *Id*. Prison movement logs similarly provide that Holland was moved to segregation on July 11. *Id*. at 169. In contrast to this weight of evidence, though, Holland testified that he was moved to segregation or "the hole" over a week earlier, on "July the 1st or 2nd." *Id*. at 62:11-19. It is undisputed that Holland was released from segregation on July 28, 2017. *Id*. at 169.

Holland's earlier date of July 1 or 2 corresponds to another alleged fact that is central to the causation analysis and which McLaughlin has failed to address—a visit by a fire marshal. In *Holland I*, Holland alleged that he injured his head due to an

---

2020) (citations omitted). A three-to-four-month disparity between the protected conduct and the adverse action is insufficient, but a two-week gap can be evidence that the proffered reason for the underlying action was pretextual. *Id*. at 1328 (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)). Even if the disparity is only a couple of weeks, the Circuit has suggested that such a short gap alone is "probably insufficient to establish pretext by itself." *Id*. (citing *Hurlbert*, 439 F.3d at 1298).

improperly located locker in his cell. Holland testified that he spoke to McLaughlin on five or six occasions regarding grievances he filed concerning the lockers and other similar matters. *Id*. at 37:8-38:2. Each time, McLaughlin replied, "put it on paper." *Id*. As part of his campaign to address the "illegal cell design" that included misplaced lockers and non-functioning emergency buttons, Holland wrote two letters to a fire marshal named Chris Fox, asking him to "come in and collect evidence." *Id*. at 45:9-47:15. According to Holland, Fox visited Holland "[t]he day before they put [him] in isolation." *Id*. at 47:8-22. This suggests that Holland was moved to segregation earlier than July 11.

Most importantly, evidence that Holland was moved to segregation immediately after Fox visited his cell to investigate issues raised in *Holland I* buttresses Holland's claim that his transfer was retaliatory.

In short, "the chronology of events" is sufficient to create a genuine issue of material fact as to whether Holland's prior litigation was a motivating factor behind his transfer into segregation quarters. Thus, Holland has met his initial burden under *Mt. Healthy*, and the burden shifts to McLaughlin to show that he would have ordered Holland's move to segregation in the absence of Holland's prior lawsuits. McLaughlin is entitled to summary judgment if he "can show that he would have taken the same action in the absence of the protected activity." *Smith*, 532 F.3d at 1278.

As to the second step of the *Mt. Healthy* inquiry, McLaughlin argues, and prison records provide, that Holland "was placed into segregation … based on a violation of facility rules and/or a failure to follow instructions." Docs. 40-2 at 9; 40-3 at 4. According to prison records, Holland was moved to segregation for "violation of facility

rules/failure to follow instructions." Doc. 40-5 at 172 (segregation assignment memo). Holland's alleged failure to follow instructions arose from his objection to being moved to a general population unit that Holland considered more dangerous. Doc. 40-5 at 64:7-65:19. Holland's segregation transfer was quickly ruled improper on procedural grounds, perhaps because Holland "was not served a [disciplinary report] within 24 hours." Docs. 40-5 at 176; 51-1 at 11. Alternatively, it could have been improper because the corresponding disciplinary report, not available to the Court, did not include the correct GDC identification number. Docs. 40-5 at 176; 51-1 at 11. It is just not clear. What is clear is that the disciplinary report did not warrant Holland's transfer to segregation, and he was returned to general population in late July on the Classification Committee's recommendation. Doc. 40-5 at 169, 176.

Under these circumstances, the Court cannot say that McLaughlin would have approved Holland's transfer to segregation regardless of Holland's prior litigation. A jury might well credit McLaughlin's narrative. On the other hand, a reasonable jury could credit Holland's account that his claims in *Holland I* and *II* and the related visit from the fire marshal were catalysts for Holland's segregation transfer. A jury could also infer that the citation for failure to follow orders was baseless or pretextual; therefore, McLaughlin did not act out of lawful motivation. Given this dispute of material fact, summary judgment concerning Holland's retaliation claim would not be proper.[2]

[2] McLaughlin also argues that qualified immunity bars Holland's claims. Doc. 40-2 at 14-15. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach,* 561 F.3d 1288,

**1. Compensatory and punitive damages**

McLaughlin also moves for summary judgment regarding any potential claim compensatory and punitive damages because Holland "cannot prove that he suffered a physical injury that is more than *de minimis*." Doc. 40-2 at 16-17. First, Holland's complaint does not seek punitive damages. *See generally* Doc. 1; s*ee also Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021). Second, there is no evidence that Holand suffered a physical injury because of McLaughlin's alleged retaliation. Accordingly, the Court grants McLaughlin's motion as to any claim for compensatory damages.

**B. Deliberate Indifference to Medical Needs**

McLaughlin is entitled to summary judgment on Holland's claims of deliberate indifference to serious medical needs. On screening under 28 U.S.C. § 1915A, the Court allowed Holland to proceed on a deliberate indifference claim based on his

---

1291 (11th Cir. 2009)). To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." *City of W. Palm Beach*, 561 F.3d at 1291. This two-step analysis may be done in whatever order deemed most appropriate for the case. *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). McLaughlin argues that he acted under discretionary authority by performing his duties as warden of Macon State Prison. Doc. 40-2 at 14-15. Holland does not dispute that McLaughlin acted within his discretionary authority, so the burden shifts to Holland to establish that McLaughlin violated clearly established rights. For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff can show a right is clearly established in three ways: first, by pointing to "relevant case law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018). Second, a plaintiff "can identify a broader, clearly established principle that should govern the novel facts of the situation." *Id*. Third, the plaintiff "can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." *Id*. at 1259-1260. It is well-established that prison officials cannot retaliate against prison inmates for filing lawsuits or grievances in which the inmate complains about prison conditions. *See O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011); *Wright*, 795 F.2d at 968. McLaughlin does not dispute this. Rather, he argues that Holland's "conclusory allegations" are insufficient factually to establish a First Amendment violation. Docs. 40-2 at 15; 52 at 3. For now, that argument fails.

allegations that McLaughlin was "fully aware" of Holland's medical condition and failed to ensure that Holland had a "medical diet pack out." Doc. 10 at 2.

To prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that he had an objectively serious medical need and that the prison official acted with deliberate indifference to that need. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). In his amended complaint, Holland cited as medical needs his "severe injuries," "heart problems," and "high blood pressure." Doc. 8 at 2. It is also evident from past litigation and his deposition in this action that Holland suffers from hepatitis C, which is a serious medical need. Doc. 40-5 at 23; *see also Brown*, 387 F.3d at 1351. Thus, Holland's impairments rise to the level of a serious medical need.

That said, no reasonable jury could find deliberate indifference. To establish deliberate indifference, Holland must show that McLaughlin had subjective knowledge of a risk of harm and that McLaughlin disregarded that risk through more than mere negligence. *Brown*, 387 F.3d at 1351. The undisputed evidence establishes that Holland received extensive medical care during and after his temporary confinement in segregation quarters. According to the declaration of Kenneth Cowens, the medical director of Macon State Prison, Holland received medical attention on July 12, 15, 17, 21, 24, 27, August 3, and August 4, 2017, "in the same manner as medical care and attention are provided to inmates in general population." Doc. 40-4 at 2-3.

Additionally, the record indicates that a screening process ruled out any medical contraindications for Holland's initial placement into segregation quarters. *Id*. at 6. Finally, in between his formal medical appointments, the record shows that Holland was

instructed to treat with an assortment of self-administered medications, including Prilosec, Naproxen, Triamcinolone, and Proscar. *Id*. at 3, 8-10.

Given the undisputed evidence relating to the extensive medical care Holland received in segregation quarters and McLaughlin's position as warden, as opposed to a trained medical-care provider, no reasonable jury could conclude that McLaughlin disregarded Holland's medical needs at a level rising to "more than mere negligence" simply by approving of Holland's temporary transfer into segregation quarters. *Cf. Reed v. Santiago*, 2020 WL 5868214, at *3 (N.D. Fla. Aug. 31, 2020) ("Generally speaking, the warden and any institutional staff who are not medical providers are not liable when they rely on the medical expertise of medical staff.") (citing *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1050 (11th Cir. 2014)).

Accordingly, McLaughlin is entitled to summary judgment regarding Holland's deliberate indifference to medical needs claim.

## IV. CONCLUSION

For the reasons discussed above, McLaughlin's motion for summary judgment (Doc. 40) is **GRANTED** as to Holland's claim of deliberate indifference to medical needs but **DENIED** as to Holland's retaliation claim. Regarding his retaliation claim, Holland can recover only nominal damages. Accordingly, this case shall proceed to trial for the resolution of Holland's remaining claim of retaliation.

**SO ORDERED**, this 11th day of August, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT